UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL C., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 21-CV-99-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.    Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II. Background and Procedural History

Plaintiff was a gunner in the Marines from 2001 to 2005. (*See* R. 68, 84, 2159). He was injured in combat in Iraq and was honorably discharged. (*See* R. 2310). Subsequently, he worked various jobs including as a bartender, in casinos, and in "nondestructive testing." (R. 2310, 2322). However, plaintiff reported that he lost those jobs due to an inability to

2

hear instructions necessary for his job, as well as to heavy drinking and interpersonal problems. *Id*.

Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act (Act) on August 12, 2018. (R. 28). He alleges that he was disabled during a closed period between October 30, 2013 and May 1, 2019. *Id*.[2] Plaintiff alleges disability due to post-traumatic stress disorder (PTSD), traumatic brain injury, post-discectomy back surgery, hearing loss, and tinnitus. (R. 63). He was 32 years old on the alleged disability onset date. (R. 9, 232). Plaintiff has an associate's degree from Spartan School of Aeronautics. (R. 2310). Plaintiff also has past work as a surveillance system monitor, construction worker, furniture delivery worker, and x-ray technician. (R. 39-40, 84-85).

Plaintiff's application was denied on initial review and on reconsideration. (R. 28). Plaintiff requested a hearing, which an Administrative Law Judge (ALJ) conducted on September 19, 2019. *Id*. Plaintiff and a Vocational Expert (VE) testified. *Id*. On October 24, 2019, the ALJ issued an unfavorable decision denying disability benefits. (R. 28-54). The ALJ denied plaintiff's request to reopen the earlier proceeding, finding that the initial denial was outside the four-year period to reopen an initial determination for good cause. (R. 28). The Appeals Council issued a decision on January 9, 2020, denying plaintiff's request for review of the ALJ's decision. (R. 14-18). Accordingly, the ALJ's October 24, 2019 decision became the Commissioner's final decision. (R. 14). Following the Appeals

---

[2] Plaintiff had previously filed an application under Title II on February 5, 2014 that was denied on initial consideration. *Id*.

Council's denial, plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's October 24, 2019 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See id.* at 1084. Here, the ALJ determined plaintiff did not engage in substantial gainful activity between his alleged onset date of October 30, 2013 and his last insured date of September 30, 2018. (R. 31).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that plaintiff has severe impairments of degenerative disc disease, hearing loss/tinnitus, left wrist status post-surgical repair, PTSD, depressive disorder, and alcohol use disorder in early remission. (R. 31). The ALJ found there is insufficient evidence to establish that plaintiff's alleged traumatic brain injury is a medically determinable impairment. *Id.*

At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one listed in Appendix 1 of the regulation,

4

which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.00 (musculoskeletal system), 2.00 (Special Senses and Speech), and 12.00 (Mental Disorders). (R. 31-33).

The ALJ also discussed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *See* 20 C.F.R. § 404, subpt. P App'x 1. The ALJ found that plaintiff has a moderate limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a marked limitation in adapting or managing oneself. (R. 32-33). Because plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. (R. 33).

At step four, the claimant must show that his impairment or combination of impairments prevents him from performing work he has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: The [plaintiff] is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally. The [plaintiff] is able to sit up to six hours in an eight-hour workday. The [plaintiff] is able to stand and/or walk up to six hours in an eight-hour workday. The [plaintiff's] need to change positions can be accommodated by the fifteen-minute morning and afternoon break and the thirty-minute lunch period. The [plaintiff] is able to frequently handle with the left, non-dominant upper extremity. The [plaintiff] is able to work in an environment where there is moderate noise as that term is defined in the Selected Characteristics of Occupations (SCO). The [plaintiff] is able to perform simple, routine tasks and is able to interact with supervisors as needed to receive work instructions. The [plaintiff] is able to work in proximity to coworkers but job should not involve close communication or cooperation with co-workers in order to complete work tasks. The job should not involve interacting with the general public. The [plaintiff] is able to perform a low stress job meaning a job that does not involve strict production quotas or tasks performed at a rapid production-rate pace. The [plaintiff] is able to adapt to a low stress work environment where there are limited changes in the work setting or work duties. He is able to sustain attention and concentration for up to two hours at a time when performing simple, routine tasks. The [plaintiff] is able to sustain the mental demands associated with performing simple, routine tasks throughout an ordinary workday and workweek. The [plaintiff] would be off task, on average, twenty percent of an eight-hour workday.

(R. 33-34). The ALJ found that plaintiff was unable to perform his past relevant work during the relevant period and that there were no jobs that existed in significant numbers in the national economy that plaintiff could have performed. (R. 40-41). As such, the ALJ

> conclude[d] that, considering all of the [plaintiff's] impairments, including the substance use disorder, the [plaintiff] is unable to make a successful vocational adjustment to work that existed in significant numbers in the national economy. A finding of 'disabled' is therefore appropriate under the framework of the [applicable Medical-Vocational Guideline rule].

(R. 41).

However, citing 20 C.F.R. § 404.1535, the ALJ proceeded to evaluate whether plaintiff's substance use disorder is a contributing factor material to the determination of disability. (*See* R. 30). She determined that if plaintiff stopped substance use, his remaining limitations were severe but would not meet a Listing. (R. 41-42). In the absence of substance use, the ALJ assessed an RFC for light work, with essentially the same limitations found in the initial RFC determination above. However, the ALJ's alternative RFC determination eliminated the final limitation—i.e., that plaintiff would be off-task, on average, twenty percent of an eight-hour workday. (*See* R. 43-44). The ALJ determined at step four that plaintiff would still have been unable to perform any past relevant work. (R. 48). However, at step five, she found the ALJ found that, if plaintiff stopped substance use, he could have performed the requirements of representative occupations, including

> ***Small product assembler***, light exertion, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 706.684-022, with approximately 190,000 jobs available within the national economy;
>
> ***Packer/inspector***, light exertion, unskilled, SVP level 2, DOT # 559.687-074, with approximately 160,000 jobs available; and
>
> ***Housekeeper***, light exertion, unskilled, SVP level 2, DOT # 323.687-014, with approximately 414,000 jobs available.

(R. 48-49). The ALJ's step-five findings relied in part on the VE's hearing testimony as to a hypothetical person with Plaintiff's age, education, work experience, and the alternative RFC determination. *See id*. Accordingly, the ALJ concluded at step five that Plaintiff was not disabled during the relevant time period. *Id.*

### IV. Discussion

Plaintiff challenges the ALJ's decision on three grounds: (1) there is no substantial evidence to support the ALJ's finding that plaintiff's alcohol dependence contributed materially to his mental impairments; (2) the ALJ improperly ignored evidence related to plaintiff's complaints of pain in his left hand; and (3) the ALJ improperly denied plaintiff's request to reopen his earlier Title II application. Defendant argues that substantial evidence supports the ALJ's materiality and RFC findings and that the Commissioner properly rejected plaintiff's request to reopen as untimely.

#### A. Substance Abuse

Under the Commissioner's regulations, when a disability claimant is found disabled and there is medical evidence of drug addiction or alcoholism (DAA), the Commissioner must determine whether the DAA "is a contributing factor to the determination of disability." 20 C.F.R. § 404.1535(a). The regulation sets forth the process to be used in making this determination:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> > (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

*Id*. § 404.1535(b).

Subsequently, the Commissioner issued additional guidance in the form of a teletype. In *Salazar v. Barnhart*, the Tenth Circuit noted that the teletype explained the method ALJs should use when evaluating disability applications for claimants who have drug or alcohol addiction (DAA) in addition to one or more other mental impairments. 468 F.3d 615, 622-23 (10th Cir. 2006). The teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is *not* a contributing factor material to the disability determination[.]" *Id*. at 623 (emphasis in original).

Noting that it is "very difficulty to disentangle the restrictions and limitations imposed by the substance use disorder from those resulting from other mental impairments," the Commissioner's teletype states that

> [t]he most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol. Of course, when evaluating this type of evidence consideration must be given to the length of the period of abstinence, how recently it occurred, and whether there may have been any increase in the limitations and restrictions imposed by the other mental impairments since the last period of abstinence. **When it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate**.

9

*Id*. (emphasis added).

In connection with an application for disability through the Veterans Administration (VA), plaintiff was examined by Minor Gordon, Ph.D. on June 5, 2013 and by James Lee, Ph.D. on September 3, 2013. Dr. Gordon listed diagnoses of PTSD, severe major depressive disorder, and alcohol abuse, "ongoing." (R. 2307). Dr. Lee listed diagnoses of PTSD, chronic major depressive disorder, and alcohol dependence, "continuous." (R. 2319). Both psychologists checked a box denying that it is "possible to differentiate what symptom(s) is/are attributable to each diagnosis." (R. 2308, 2320). Dr. Gordon explained: "It is not possible to differentiate what portion of each symptom is attributable to each diagnosis because they are inter[-]related and overlap." (R. 2308). Similarly, Dr. Lee stated: "It is not possible to differentiate what portion of each symptom is attributable to each diagnosis because the symptoms are all interrelated." (R. 2320).

The ALJ's decision noted some of Dr. Lee's diagnoses and acknowledged Dr. Lee's view that "it was not possible to differentiate what portion of the occupational and social impairment was attributable to each diagnosis because the symptoms were interrelated." (R. 35). However, the ALJ did not address why she rejected this opinion. The decision also failed to address Dr. Gordon's assessment or to address SSR 13-2p.

The ALJ's failure to meaningfully address the opinions of Drs. Gordon and Lee is contrary to the Tenth Circuit's guidance in *Salazar*, as well as to the general rule that ALJs must discuss the "uncontroverted evidence [they] choose[] not to rely upon, as well as significantly probative evidence [they] reject[]." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). As such,

the ALJ's materiality determination does not reflect application of the proper legal standards, as set forth in Tenth Circuit case law and the Commissioner's binding guidelines. *See Salazar*, 468 F.3d at 622-23; SSR 13-2p; *see also Hayden v. Barnhart*, 374 986, 992 n.9 (10th Cir. 2004) (noting that SSRs are "binding on the ALJ").

The Commissioner argues that the ALJ reasonably discounted the evidence that the effects of plaintiff's alcohol use cannot be separated from the effects of his other mental impairments. The Commissioner suggests that the opinions of Dr. Lee and Dr. Gordon are less probative, because they predate any significant periods of sobriety, and later evidence showed that plaintiff's functioning improved when he was sober. However, this reasoning is faulty. First, it is not reflected in the medical opinions; Dr. Lee and Dr. Gordon did not indicate that their opinion might change with the benefit of future periods of sobriety.

Second, the ALJ's decision did not articulate this reasoning. The Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's post-hoc effort to salvage the ALJ's decision would require the court to overstep its institutional role and usurp essential functions committed in the first instance to the administrative process); *Robinson v. Barnhart,* 366 F.3d 1078, 1084-85 (10th Cir. 2004) (per curiam) (same); *SEC v. Chenery Corp.,* 318 U.S. 80, 88 (1943). Here, Defendant's argument relies on post-hoc rationalizations that are not apparent from the ALJ's decision. The Court therefore must reject this argument.

The Commissioner argues that evidence in the record supports the ALJ's conclusion that plaintiff had a greater functional capacity during periods of sobriety. The Commissioner's brief cites portions of the record that it contends support the ALJ's materiality finding. The Court has reviewed this evidence and, while at times plaintiff showed some improvements in overall functioning, the ALJ's decision did not make an explicit or implicit connection between this evidence and the conclusion that, during the relevant period, the only condition that prevented plaintiff from performing substantial gainful activity was his alcohol use.

The Court does not conclude here whether substantial evidence may support the ALJ's materiality determination. Rather, the ALJ failed to adequately address significantly probative evidence and to provide a sufficient explanation to enable meaningful judicial review of her materiality determination. *See Clifton,* 79 F.3d at 1009 (holding that "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion," and thus the ALJ's unexplained conclusion was "beyond meaningful review"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that ALJ's listing of factors he considered was inadequate, where court was "left to speculate what specific evidence led the ALJ to [his conclusion]"). For these reasons, the ALJ's decision is reversed and remanded for the ALJ to address all significantly probative evidence and, if appropriate, provide a sufficient "explanation of findings to permit meaningful review" of her materiality determination as to plaintiff's alcohol use. *Fischer-Ross*, 431 F.3d at 734.

### B. Pain

Plaintiff's treatment records in 2014 showed a slightly decreased range of motion and pain with ulnar deviation of the left wrist, resulting from a shrapnel wound. (*See* R. 501). Plaintiff reported some pain in his left hand on other occasions, and an examination in 2008 indicated painful range of motion of the wrist and weakness of the wrist and fingers following surgery. The ALJ's decision noted plaintiff's chronic wrist pain arising from the shrapnel injury and prior surgery on his left wrist. (*See* R. 44-45). However, the ALJ found that the evidence relating to his injury supports an RFC for light exertion work with only frequent handling with the left arm. (R. 44-45).

The ALJ's decision noted plaintiff's mildly reduced range of motion in 2014, but in the same visit, plaintiff's rapid hand and finger to nose movement was normal, and he had full and equal grip strength. (*See* R. 44). On another visit, plaintiff reported some numbness and tingling in the wrist. (*See* R. 45). However, plaintiff stated that his "left hand did not cause him much pain and that he did not need medication for it." (R. 44-45). Furthermore, as the ALJ explained, the record lacks evidence that any additional treatment has been recommended for his left wrist. (*See* R. 45). As such, substantial evidence supports the ALJ's findings in this respect. Although the ALJ's decision did not address the 2008 examination, this evidence predated plaintiff's alleged onset date by approximately five years, and plaintiff points to no evidence that the symptoms observed at that time continued throughout the alleged period of disability in this case. Thus, this omission does not warrant reversal.

### C.     Request to Reopen Prior Application

Plaintiff objects to the ALJ's denial of his request to reopen a prior application for disability insurance benefits. The prior application was filed in February 2014 and denied at the initial determination level in May 2014. (R. 28, 61). As the ALJ correctly noted, "[a]n application for Title II benefits may be reopened within four years of the date of the notice of an initial determination for 'good cause.'" (R. 28 (citing (20 CFR §§ 404.988(b), §404.989)). In this case, plaintiff's August 2018 application fell outside the four-year window. *Id*. The ALJ also found that reopening was not warranted under SSR 91-5p, *Policy Interpretation Ruling Titles II and XVI: Mental Incapacity and Good Cause for Missing the Deadline to Request Review* (July 1, 1991).

Generally, the Commissioner's decision not to reopen a prior application is not subject to judicial review. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) ("The Secretary's decision not to reopen a previously adjudicated claim for benefits is discretionary and, therefore, is not a final decision reviewable under 42 U.S.C. §405(g)."). Plaintiff contends that his claim falls under an exception when a claimant has previously raised the issue of lack of counsel and lack of mental capacity to file a timely appeal and has "identified it as . . . a colorable constitutional due process" issue. (Doc. 15 at 13; *see* R. 61-62). However, this case is unlike the example plaintiff cites, in which the district court found "no indication in the documents presented to the Court that the Commissioner, prior to denying Plaintiff's request to reopen [her prior] claim, considered Plaintiff's mental disability . . . or her claims of mental disability, poor education and lack of representation as required by SSR 91-5p." *Schobey v. Barnhart*, 2006 WL 8444396, at *5 (D.N.M. Mar.

7, 2006). Here, the Court finds no indicia that the ALJ failed to accord due process to these considerations. Instead, the ALJ's decision acknowledged plaintiff's argument but found the conditions for reopening identified in SSR 91-5p were absent. (R. 28). As such, the Court lacks jurisdiction to review the Commissioner's decision not to reopen plaintiff's prior application. *See Brown*, 912 F.2d at 1196.

## V.   Conclusion

As set forth above, the ALJ's decision did not adequately support the ALJ's finding of materiality as to plaintiff's alcohol use during the relevant period. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this 19th day of September, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge